**GROSJEAN, Supervisor of Public Accounts, v. AMERICAN PAINT WORKS. ***

No. 16041.

Court of Appeal of Louisiana. Orleans. April 15, 1935.

*Rehearing denied May 13, 1935.

450

Maurice B. Gatlin, of New Orleans, for appellant.

Hugh M. Wilkinson, of New Orleans, for appellee.

LECHE, Judge.

On October 30, 1934, the supervisor of public accounts of the state of Louisiana filed in the civil district court for the parish of Orleans a rule against the American Paint Works. It was alleged that the defendant in rule was a dealer in kerosene within the meaning and intent of Act No. 15 of the First Extraordinary Session of the Legislature for the year 1934; that on October 15, 1934, it had in its possession, at its place of business in the city of New Orleans, 8,000 gallons of a refined petroleum product having the chemical or scientific properties specified in said act and upon which it had paid no tax and furnished no bond as required by law. The tax alleged to be due, including the inspection fee, penalty, and attorney's fees, amounted to the sum of $108.90, and the American Paint Works was ordered to show cause on a certain day why it should not be prohibited from the further pursuit of its business until such time as it paid the said tax, including the inspection fee, penalty, and attorney's fees, together with all costs of the proceeding. From a judgment dismissing the rule, the supervisor of public accounts has appealed to this court.

The American Paint Works excepted to the rule as disclosing no right or cause of action for the reason, first, that Act No. 15 of the First Extraordinary Session of 1934 was unconstitutional, null, and void, being contrary to the terms of section 22 of article 6, of the Constitution of 1921, and, second, that in the alternative and if said act be held constitutional, for the reason that said act does not apply to the fluid described in the rule, inasmuch as it is not alleged to be either an illuminating oil, a heating oil, or a motor fluid. The learned trial judge reserved his ruling on the exceptions and after a trial on the merits dismissed the rule for the following written reasons:

"There are two points presented by the defendant in rule, the first of which is that the Act under which the tax purports to be imposed is unconstitutional because in violation of Section 22, Article VI, of the Constitution of 1921, and the additional point that, even if the Act be considered as constitutional, the defendant does not come within the provisions of the Act.

"The tax is imposed under Section 1 of Act 15 of the First Extraordinary Session of 1934. This Act shows clearly that the kerosene intended to be taxed was that which was a product answering the definition found at the end of the section, and which came within one of the categories enumerated in the second paragraph, that is, oil of the physical and chemical contents and properties shown in the definition but which should be used either for illumination, fuel, cleansing or motor or propulsion purposes. Therefore, when this enumeration is followed by the words 'or by any other similar name', the language just quoted has reference to the types precedingly enumerated.

"Inasmuch as it is admitted that the car containing the product which the defendant has in its possession was manufactured purely for and would be used for the sole purpose of a paint solvent, it is clear to my mind that it does not come within the terms of the statute, even though it may have the physical properties and the chemical contents contained in the definition. Otherwise the enumeration would be useless and the definition alone would have governed the determination of what was intended to be taxed. In other words, the doctrine of ejusdem generis applies.

"Having reached this conclusion, it is unnecessary to pass on the question of the constitutionality.

"For the foregoing reasons, the rule will be dismissed."

■ The question was raised by counsel in argument as to the right of this court to hear this appeal in view of article 7, § 10, of the Constitution of 1921, which defines the jurisdiction of the Supreme Court of Louisiana. No motion to dismiss the appeal was filed, and the question was not raised in the briefs, however, we deem it advisable to give our views on this question before considering the case on its merits.

Nowhere in section 10 of article 7, of the Constitution of 1921, are the words *legality* or *constitutionality* used, save and except in paragraph 5 thereof. The pertinent part of that paragraph reads as follows:

"It shall have appellate jurisdiction in all cases wherein the constitutionality or legality of any tax, local improvement assessment, toll or impost levied by the State, or by any parish, municipality, board, or subdivision of the State is contested, *or* where the legality, or constitutionality of any fine, forfeiture, or penalty imposed by a parish, municipal corporation, board, or subdivision of the State shall be in contest, whatever may be the amount thereof, *and* in all cases wherein an ordinance of a parish, municipal corporation, board, or subdivision of the State, or a law of this State has been declared unconstitutional." (Italics ours.)

It will be seen from the above quotation that there are three separate constitutional grants of jurisdiction in three separate and distinct classes of cases conferred on the Supreme Court. The *first* is "in all cases wherein the constitutionality or legality" of any law or ordinance of the state, or any parish, municipality, board or subdivision of the state, levying any tax, local improvement assessment, toll or impost, 'is contested.' Under this provision, if the law or ordinance is passed or adopted by any of the authorities specifically designated and is the kind of law or ordinance prescribed, namely, if it levies any tax, local improvement assessment, toll or impost, then to confer jurisdiction it is only necessary that such law or ordinance be "contested."

The *second* class is where "the legality, or constitutionality of any fine, forfeiture, or penalty" imposed by a parish, municipal corporation, board, or subdivision of the state, shall be "in contest," whatever may be the amount thereof. Here the state itself is omitted because in another paragraph jurisdiction in criminal cases is specially conferred. Under this provision, if the law or ordinance be passed or adopted by any of the designated authorities and be of the nature described, namely, if it imposes any fine, forfeiture, or penalty, such law or ordinance need only be "in contest" to confer jurisdiction. The term "in contest," as used here, and the term "is contested," as used in the first class, are synonymous, for a law which is "contested" is "in contest" and cannot be "in contest" unless it is "contested."

The *third* class in paragraph 5 of section 10, supra, is "in all cases wherein an ordinance of a parish, municipal corporation, board, or subdivision of the State, or a law of this State *has been declared unconstitutional*." This provision refers to all laws and ordinances other than those enumerated in the first and second classes, namely, laws and ordinances which *do not* impose any tax, local improvement assessment, toll or impost, or any fine, forfeiture, or penalty. Such laws or ordinances must be *declared unconstitutional* before jurisdiction attaches. The terms "law" and "ordinance," as used in this third class, have no special significance, but apply equally as well to the first two classes, depending upon whether the enactment was by the Legislature or by a parish, municipal corporation, or board. We mention this because there seems to be some confusion in the jurisprudence, and jurisdiction has been upheld or refused depending upon whether the particular legislation was a law or an ordinance. As we see it, if the legislation has been enacted by one of the authorities designated in any one of the three classes and is of the nature therein described, it makes no difference whether it be called a law or an ordinance in so far as conferring jurisdiction on the Supreme Court is concerned.

It will thus be seen that in the first two classes the law or ordinance need only be "in contest" or "contested" to vest jurisdiction in the Supreme Court, while in the third class the law or ordinance must be *adjudged unconstitutional*. As stated, there seems to be some confusion on this question, due, no doubt, to the fact that some of the decisions rendered subsequent to the adoption of the Constitution of 1921 have followed decisions rendered prior thereto under other Constitutions the language of which differs from that of article 7, section 10, of the Constitution of 1921. On this subject see McMain v. Pollock, 108 La. 594, 32 So. 558; Young v.

City of Crowley, 131 La. 780, 60 So. 242; City of New Orleans v. Vinci, 153 La. 528, 96 So. 110, 28 A. L. R. 1382; State v. Gallagher Transfer & Storage Co., Inc., 153 La. 533, 96 So. 111.; Paul v. Tabony, 157 La. 400, 102 So. 503; Downs v. Dunn, 162 La. 747, 111 So. 82; State ex rel. Thoman et al. v. Williams, 164 La. 202, 113 So. 817; Dart's Louisiana Constitutions, annotations to section 10 of article 7.

■■ Applying the above test to the present case, it will be seen that the law in question is a *state* law, being Act No. 15 of the First Extraordinary Session of the Legislature for the year 1934. This would place it in either the *first* or *third* classes, as the *second* class includes only the legislation of municipal corporations, boards, and subdivisions of the state, state legislation being excluded. It is next noticed that Act No. 15 *imposes a tax* on a certain product therein defined, namely, kerosene. This fixes its status absolutely within the *first* class as being in the category of legislation which levies a "tax, local improvement assessment, toll or impost." Thus, coming definitely under class one, it is only necessary, in order to vest jurisdiction in the Supreme Court, that its legality or constitutionality *be contested*, and this was done when the respondent in rule attacked its constitutionality by way of exception and in its answer. Thus the appeal clearly comes within the jurisdiction of the Supreme Court on the constitutional question involved. State v. Cedar Grove Refining Co. Inc., 178 La. 810, 152 So. 531; State v. Whitehead Motor Co., Inc., 179 La. 710, 154 So. 912.

Now, although jurisdiction on the constitutional question involved is clearly vested in the Supreme Court, this court has jurisdiction of the particular question here presented and in the circumstances it is our opinion that we are entitled to hear this appeal solely on the issue presented, which is clearly within our jurisdiction. There was no motion to dismiss this appeal filed by the defendant in rule and appellee, and, therefore, it submitted to our jurisdiction on the issue presented. The learned trial judge decided that the fluid sought to be taxed did not come within the terms of the statute and he *did not* pass upon its constitutionality, as a reference to his written reasons for judgment, supra, will show. Plaintiff in rule appealed to this court on the issue tried and determined by the lower court, and the defendant and appellee failed to answer the appeal. It has been held that constitutional objections raised in the lower court *by defendants* will not be considered on an appeal *by plaintiff* where defendants did not answer the appeal. Board of Health v. Town of De Quincy, 163 La. 369, 111 So. 789; State ex rel. Mattern v. City of New Orleans et al., 9 La. App. 95, 119 So. 94. It has also been held that, when a case that would not be otherwise appealable to the Supreme Court is brought there because of a constitutional question, *that court* will not decide any other questions or issues than the one of constitutionality or legality (City of New Orleans v. N. O. Butchers' Co-op. Abattoir, Inc., 153 La. 536, 96 So. 113 and cases cited therein), and in Town of St. Martinville v. Dugas, 158 La. 262, 103 So. 761, it was held that, if a constitutional question is tendered in the lower court and decided there, a right of appeal lies directly to the Supreme Court on *that* question, and that a right of appeal also lies to the proper appellate court on *other questions* coming within their jurisdiction.

The defendant in rule in this case, therefore, has the right of appeal directly to the Supreme Court on the constitutional question involved, as this is not one of the cases in which the legislation must be adjudged unconstitutional as a condition precedent to the exercise of that right. Furthermore, the particular issue now before us is in no way involved in the constitutional question and, should this case be taken to the Supreme Court either directly on appeal or by way of writs applied for and granted from our decision, that court will then have the entire matter before it. We, therefore, proceed to a consideration of the case on its merits.

The pertinent part of Act No. 15 of the First Extraordinary Session of the Legislature for the year 1934 is section 1 thereof, which reads as follows:

"Be it enacted by the Legislature of Louisiana, That in order to provide a revenue for the purpose set forth in this Act and in order to carry out the same, there is hereby levied a tax of one cent per gallon on all kerosene sold, used, consumed, distributed or handled in the State of Louisiana for domestic consumption.

"The term 'kerosene' as mentioned in this Act is intended to include and shall include what is commonly known as coal oil, furnace oil, lamp oil, tractor fuel, distillate, burning oil, stove oil, or by any other similar name, and is defined as follows:

"A refined petroleum product having the following properties to-wit: gravity 34° to 48°; Taglibue closed cup flash point 110° F.

(43.3° C.) minimum; recovery at 575° F. (310.6° C.) 90% minimum; testing and analyzing to be done in accordance with the methods adopted by the United States Department of Commerce: relative viscosity at 68° F. (20° C.) Cottrell-Ostwald viscosimeters between .8000 to 5.000; burning test: capable of being burned in a lamp, furnace, stove, tractor or motor."

▮▮▮ On the trial of this case it was proved, and, in fact, admitted that the fluid sought to be taxed here fell within the chemical or scientific classification set forth in paragraph 3 of section 1 of the Act above quoted. But, contends appellee, the fluids designated by name in paragraph 2, supra, all fall within one of three classifications, namely, illuminating oil, burning or heating oil, or motor fuel, and that, as the particular fluid in question is conceded to be used solely as a paint solvent, it does not fall within the statutory definition of "kerosene" under the well-established doctrine of ejusdem generis.

It is too well settled to be fortified by the citation of authorities that the prime purpose of statutory construction is to determine and ascertain the intention of the lawmaking body. It is likewise elementary that the doctrine of ejusdem generis is only a rule of construction, to be applied *as an aid* in ascertaining the legislative intent, and cannot control where the plain purpose and intent of the Legislature would thereby be hindered or defeated. 59 C. J., § 581, p. 982. The doctrine of ejusdem generis has been stated to be that rule of construction where general words follow the enumeration of particular classes of persons or things, and where the general words will be construed as applicable only to the persons or things of the same general nature or class as those enumerated. It will thus be seen that the basis of the doctrine is the use of words or terms and that words or terms enumerating special or particular persons or things, followed usually by the words "other," or "any other," govern and control subsequent general words or terms. Now, a most casual reference to the statute under consideration will reveal at once a total absence of the necessary elements of the doctrine of ejusdem generis, namely, an absence of special terms and general terms. It will be seen that, although paragraph 2 does contain certain terms, such as coal oil, furnace oil, lamp oil, etc., paragraph 3 is a *chemical or scientific formula* specifying particular properties and certain mathematical limita-

tions. It will be noted at the outset that a product or fluid either falls within or without that scientific definition. The statute does not say that kerosene is defined as coal oil, furnace oil, lamp oil, etc., and all other similar fluids, thus making the doctrine of ejusdem generis applicable. It says that the term "kerosene," as mentioned in this act, is defined as a refined petroleum product having the following properties, to wit, and then follows a scientifically certain and fixed formula, within or without which every refined petroleum product falls. The act then goes on to say that kerosene, *as thus defined, shall include* what is commonly known as coal oil, furnace oil, lamp oil, etc., and products known by any other similar name. Paragraph 2 of the section is not a definition of kerosene. Paragraph 3 is the definition thereof and paragraph 2 merely mentions some of the products *included.*

It appears that the Legislature particularly avoided merely the use of terms and resorted to the use of a chemical or scientific analysis or formula. Therefore, under the definition adopted, if the product be a petroleum product having the properties specified, it is taxable under the statute regardless of its name, or the use to which it may be put. It is true that what is generally known as "kerosene" is sometimes designated as coal oil, furnace oil, lamp oil, etc., and, therefore, the general public might not recognize the scientific definition contained in paragraph 3 of section 1 of the act as applying to these products. The Legislature, recognizing this fact and in order to give general notice of the product upon which the tax was levied, said that the scientific definition *shall include* coal oil, furnace oil, lamp oil, etc., and the other names familiar to the public at large. It is our opinion that the fluid sought to be taxed in this case clearly comes within the meaning and intent of the statute, and is, therefore, subject to the tax.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that there be judgment herein in favor of Miss Alice Lee Grosjean, supervisor of public accounts of the state of Louisiana, and against the American Paint Works, in the full sum of $108.90, together with all costs of this proceeding; and it is hereby further ordered, adjudged, and decreed that, in default of the payment of said amount, the defendant in rule, the American Paint Works, be and it is hereby ordered to cease from fur-

ther pursuit of its business as a dealer in kerosene.

Reversed.

JANVIER, J., absent, takes no part.